UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TROY MCELMURRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-102-P |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___). The parties have briefed the issues and consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). For the following reasons, Defendant's decision is reversed and remanded for further proceedings consistent with this Order.

I.   Administrative History and Agency Decision

On July 17, 2017, Plaintiff filed his Title II application for DIB alleging he became disabled on October 20, 2016. AR 10. His claim was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). On September 27, 2018, the ALJ held a hearing at which a vocational expert ("VE")

testified.[1] AR 32-40. Following the well-established sequential evaluation procedure, the ALJ found Plaintiff retained the ability to perform jobs existing in significant numbers in the national economy, and that, therefore, Plaintiff had not been disabled within the meaning of the Social Security Act through January 25, 2019, the date the ALJ issued the unfavorable decision. AR 10-17.

At the first step of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ gave "great weight" to the initial and reconsideration opinions of the state agency physicians and determined Plaintiff's fibromyalgia is his only severe medically determinable impairment. The ALJ found Plaintiff's anxiety to be non-severe.

At step three, the ALJ considered Plaintiff's severe and non-severe impairments singly and in combination and found they did not meet or medically equal the requirements of any of the presumptively disabling impairments listed at 20 C.F.R. 404.1567(b). The ALJ determined Plaintiff's residual functional capacity ("RFC") at the first stage of step four:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except the claimant can sit no more than six hours in an eight hour day, stand no more than six hours in an eight hour day, and walk no more than six hours in an eight hour day.

AR 14.

---

[1] After establishing the identity of Plaintiff, the ALJ did not question him further. When the ALJ refers to Plaintiff's "testimony" in the unfavorable decision, it appears he is referring to the opening statement of Plaintiff's attorney.

Based on the determined RFC, the ALJ concluded Plaintiff could not perform the demands of his past relevant work. However, at step five, the ALJ adopted the VE's testimony and concluded Plaintiff could meet the demands of unskilled, light work including parking lot attendant, counter attendant, and furniture rental clerk. The ALJ determined that the VE's testimony regarding the classification of jobs was consistent with the information contained in the Dictionary of Occupational Titles. AR 17.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Defendant Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II.   Issues Raised

Plaintiff contends the ALJ erred in discussing only the evidence that supported a finding of non-disability and failing to discuss the significantly probative evidence that contradicted his findings.

Further, Plaintiff contends the ALJ erred in failing to properly articulate the dismissal of the mental impairments found by Dr. Jason Gunter in his assessment of the record on reconsideration of the state agency's initial denial of benefits, and in failing to include those mental limitations in the RFC.

III.   Standard of Review

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation, quotations, and alteration omitted).

IV. <u>Analysis</u>

    A. <u>The ALJ's Consideration of the Medical Evidence</u>

The medical evidence in this case is admittedly sparse. In determining Plaintiff was not disabled, the ALJ relied, in part, on the "minimal private treatment" records. AR 16. Plaintiff's counsel, however, explained in his opening statement at the administrative hearing that Plaintiff has been unable to pay for medical examinations and prescription drugs because of his "financial condition." AR 34. The ALJ did not ask Plaintiff a single question at the hearing, much less why he was no longer able to afford medical treatment.

It is well established that an ALJ cannot rely on a lack of medical treatment as a basis to find a claimant nondisabled without first establishing why the claimant was not receiving said treatment.

> . . .[B]efore the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

*Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quotations omitted). Here, the ALJ specifically relied on a lack of medical treatment without first establishing, or even inquiring, as to why Plaintiff was not receiving medical treatment. Presuming without deciding that Plaintiff was unable to afford medical care, the ALJ did not indicate in his decision that free medical care was available to Plaintiff. *See, cf., Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (explaining that the ALJ did not err in considering claimant's failure to seek medical care where ALJ specifically determined that free medical care was available).

After counsel's opening statement, the ALJ immediately began questioning the VE. As noted, despite the ALJ's failure to seek further explanation of Plaintiff's inability to pay for medical treatment, the ALJ relied, in part, on the minimal private treatment records in determining whether Plaintiff had met his burden of proving the severity of his medical impairments. Moreover, the ALJ did not fully discuss the medical records from Plaintiff's primary care provider, at least one of which included functional limitations.

Plaintiff established care with the Norman Regional Health System on May 14, 2015. Storm Eagle, APRN, became his primary care provider. On that date, Plaintiff complained of low back pain with muscle spasms. AR 274. Upon completion of the initial examination, Nurse Eagle diagnosed Plaintiff with lumbago, GERD, and hypertension. Nurse Eagle continued Plaintiff's medications for GERD and hypertension and prescribed Zanaflex, a Medrol pack and Norco tablets for his back pain and spasms. AR 275.

Nurse Eagle referred Plaintiff to Dr. Sobia Ahmad, M.D., for further evaluation. On January 28, 2016, Dr. Ahmad performed extensive testing and ultimately diagnosed Plaintiff with fibromyalgia and arthralgia and continued Plaintiff's prescription for Cymbalta. AR 239. Additionally, Dr. Ahmad noted Plaintiff's symptoms including fatigue, muscle weakness, tremors, muscle cramps, difficulty sleeping, waking unrefreshed, irritable bowel syndrome ("IBS") and anxiety—all classic symptoms of fibromyalgia. AR 236.[2] Although Plaintiff demonstrated normal range of motion in his shoulder, elbows, and hips, Dr. Ahmad noted diffuse tenderness bilaterally on Plaintiff's lower legs. AR 238.

Plaintiff continued regular treatment with Nurse Eagle. AR 246. During the period of treatment, Plaintiff made numerous other complaints, including complaints about hand tremors, back pain, multiple joint pain, and fatigue—all of which also may be symptoms of fibromyalgia.

---

[2] *See* Soc. Sec. Ruling, 12-2p; Evaluation of Fibromyalgia, SSR 12-2P (S.S.A. July 25, 2012) (describing symptoms of fibromyalgia including widespread pain, waking unrefreshed, depression, anxiety disorder, or IBS).

6

The ALJ stated that Plaintiff "testified he is disabled due to fibromyalgia, with signs and symptoms including gait disturbance." AR 15. Plaintiff did not so testify as Plaintiff did not testify at all during his administrative hearing. His counsel included this allegation in the opening statement. However, Plaintiff's experience of gait disturbance is supported by a December 27, 2016 treatment note in which Nurse Eagle reported Plaintiff had trouble ambulating more than thirty or forty feet. After ambulating a relatively short distance, Plaintiff became kyphotic with an abnormal gait. AR 253.

The ALJ did not discuss this functional limitation in his decision. Rather, the ALJ stated Plaintiff's complaints of disabling pain and functional limitations were "not entirely consistent with the medical record," AR 15, citing the following evidence:

* Plaintiff's description of daily activities including meal preparation, vacuuming, dusting, driving a car, shopping in stores, paying bills, handling a savings account, using a checkbook/money orders, working on cars, woodworking, and visiting others in their homes. Plaintiff also stated he could get along with authority figures;

* A medical report from July 20, 2016, recording Plaintiff's statement that Cymbalta and Tramadol helped with his daily pain until 2:00 in the afternoon and reporting a course of prednisone had helped his back, ankle, and foot pain;

* The same report, in which Plaintiff stated he would like to go on light duty;

* A medical report from October 20, 2016, finding no clubbing, cyanosis, or edema, and finding normal muscle strength and an intact sensory examination.

AR 15.

The shortfalls of the evidence upon which the ALJ relied are patent. First, it is unlikely that Plaintiff, every day, engages in all the activities he identified. It is well established that "evidence that a claimant engages in limited activities . . . does not establish that the claimant can engage in light or sedentary work activity." *Thompson*, 987 F.2d at

1491. *See also Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987) (holding that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity). Additionally, the limited medical records to which the ALJ cites are not sufficient to constitute "substantial evidence" supporting the RFC.

Second, an ALJ is not entitled to pick and choose from a medical opinion or medical treatment records, using only those parts that are favorable to a finding of nondisability. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Lee v. Barnhart*, 117 F. App'x. 674, 678 n.2 (10th Cir. 2004). The ALJ cannot impermissibly ignore the evidence as a whole while choosing instead to abstract pieces of evidence favorable to his decision. In this case, the ALJ did just that by referencing only the medical records that he asserts had "extensive negative findings" and the "absence of functional limitations." AR 16.

Finally, the ALJ relied on the minimal private treatment records, contending that none demonstrated any functional limitations. However, the ALJ had the means to order a consultative physical examination to help him determine whether Plaintiff has functional limitations because of the pain from fibromyalgia. An ALJ "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "[W]here there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for the proper resolution of a disability claim." *Hawkins,* 113 F.3d at 1166

(citations and quotations omitted). In this case, a consultative physical examination could have revealed whether Plaintiff demonstrated functional limitations.

Notably, the consultative "medical evaluation" submitted by Dr. Ronald Painton, M.D., and included in the medical records consisted of three sentences:

> Case reviewed. Based on evidence in file, I signed the light RFC at recon, adjusting the MDI to FM. Please return to me for review if this allowed.

AR 287. Although Dr. Painton's statement is cryptic, it may be reasonably interpreted as suggesting that further review of Plaintiff's physical limitations was warranted. Accordingly, on remand, the ALJ should consider ordering a physical consultative examination to supplement the evidence. Regardless, the ALJ must also consider all the evidence of record, not just the evidence that supports a finding of nondisability.

B. The ALJ's Consideration of Plaintiff's Mental Impairments

Plaintiff contends the ALJ erred in failing to articulate why he dismissed the impairments Dr. Jason Gunter, Ph.D., a state psychological non-examining consultant, discussed in his reconsideration of the state agency's initial findings of nondisability. Plaintiff further contends the ALJ erred in failing to include these mental impairments in the RFC.

On December 15, 2017, Dr. Gunter reconsidered the state agency's initial findings of nondisability. Based on the findings of Rachel Smiley, Ph.D., who had conducted a mental consultative examination on December 14, 2017, *see* AR 288-90, Dr. Gunter found Plaintiff to be moderately limited in his ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. AR 61. Dr. Gunter

ultimately found, however, that Plaintiff's "[m]ental is rated semiskilled." AR 293. In other words, Dr. Gunter ultimately concluded that despite the moderate limitations he had found, Plaintiff would still be able to perform semiskilled work.

Based on the same report, the ALJ found that Plaintiff had no more than "mild" mental limitations. The ALJ's finding regarding mental limitations is amply supported by substantial evidence—Dr. Smiley's report. The ALJ considered Dr. Smiley's findings and gave them "great weight," before concluding Plaintiff had no more than "mild" mental limitations. AR 13. Though the ALJ did not include mental restrictions in the RFC, he did ask the VE to identify unskilled light jobs that a hypothetical person of Plaintiff's age and education could perform. AR 37. The ALJ relied only on unskilled jobs in determining Plaintiff could perform other work. Accordingly, the ALJ's omission of mental limitations in the RFC was, at most, harmless error.

V.   Conclusion

Based on the foregoing analysis, the Commissioner's unfavorable decision is reversed and remanded for further proceedings consistent with this Opinion. Judgment will issue accordingly.

ENTERED this __12th__ day of __March__, 2021.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE